IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 14-00047-01-CR-W-DGK |
| SUSAN PROPHET, | |
| Defendant. | |

**GOVERNMENT'S RESPONSE
IN OPPOSITION TO DEFENDANT'S FOURTH MOTION
TO SET ASIDE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

The United States of America, by its undersigned attorneys, provides the following response in opposition to Susan Prophet's latest motion to set aside her 240-month sentence imposed in 2015 for bank fraud and aggravated identity theft. (Crim. D.E. 93.)[1] Because no extraordinary or compelling reason warrants a reduction in her sentence, the Government opposes the request and asks this Court to deny the defendant's motion.

**I. Procedural History**

On August 13, 2014, the defendant pled guilty pursuant to a plea agreement to bank fraud and aggravated identity theft. On June 30, 2015, this Court sentenced Ms. Prophet to 20 years' imprisonment. The sentences were affirmed on appeal. *United States v. Prophet*, 825 F.3d 904 (8th Cir. 2016).

On April 9, 2020, the defendant made a request for compassionate release to the warden at Waseca FCI. On May 22, 2020, the warden denied Ms. Prophet's request for home confinement.

---

[1] (Crim. D.E. ___.) refers to the docket entries in *U.S. v. Prophet*, 14-00047-01-CR-W-DGK.

On May 12, 2020, the defendant filed a motion for compassionate release with this Court, asserting that the situation regarding COVID-19 placed her at risk if she remained in custody. (D.E. 62.) The United States filed a response in opposition on June 1, 2020, and the defendant filed a reply on July 6, 2020. (D.E. 63, 64.)

Defendant filed a second *pro se* motion for compassionate release on September 24, 2020, again claiming that the current situation regarding COVID-19 places the defendant at risk if she remains in custody. (D.E. 66.) The United States filed a response in opposition on October 7, 2020. (D.E. 68.) On November 4, 2020, this Court issued an order denying Ms. Prophet's Motion for Compassionate Release, finding that she remained a danger to the community. (D.E. 73.) On November 10, 2020, Ms. Prophet filed a motion to withdraw her motion for compassionate release. (D. E. 75.)

Defendant filed a third motion for compassionate release on September 20, 2021, again claiming that the current situation regarding COVID-19 placed the defendant at risk if she remained in custody. (D.E. 77.) The United State opposed this third request for compassionate release, as according to BOP medical records the defendant has been fully vaccinated, a fact omitted from Ms. Prophet's motion. On January 20, 2022, this Court denied Prophet's third motion for compassionate release. (D.E. 84)

Defendant filed a fourth motion for compassionate release on July 8, 2022, again claiming that the situation regarding COVID-19 places the defendant at risk if she remains in custody and complaining that her sentence is too long. (D.E. 93.) The United State again opposes this fourth request for compassionate release, as according to BOP medical records the defendant has been fully vaccinated, a fact omitted from Ms. Prophet's motion.

Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant's release date is March 11, 2031. (*See* https://www.bop.gov/inmateloc/.)

## II. First Step Act

The First Step Act, effective December 21, 2018, provides inmates the ability to file a motion for compassionate release, an ability previously only vested in the BOP. Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). (U.S.S.G. § 1B1.13(2).) The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP. (§ 1B1.13 Commentary n.1(D).)

As the proponent of a motion, the inmate bears the burden of proving that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

### III. BOP Response to the Coronavirus Pandemic - Vaccinations

The BOP has taken significant measures to protect the health of all inmates. Details regarding the BOP's COVID-19 action plan and efforts, and a daily updated resource page are available at: https://www.bop.gov/coronavirus/index.jsp.[2]

In addition, the Attorney General has directed that the BOP prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 based on CDC risk factors, and the BOP is devoting all available resources to executing that directive. On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances concerning *every* inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note.) To date, the BOP has placed **44,941 inmates** on home confinement. *See* https://www.bop.gov/coronavirus/.

Further, BOP has worked with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP

---

[2] According to the resource page, due to the rapidly evolving nature of this pandemic, the BOP will update the dashboard daily at 3:00 p.m. based on the most recently available data from across the agency as reported by the BOP's Office of Occupational Health and Safety.

4

Case 4:14-cr-00047-DGK   Document 94   Filed 07/22/22   Page 4 of 12

institutions received the COVID-19 vaccine as it became available. Doses of the vaccine have been delivered to every BOP institution.

BOP offered the vaccine first to full-time staff because staff members—who come and go between the facility and the community—present a more likely vector for COVID-19 transmission into an institution. As of this time, vaccines have been administered to all willing staff members, and BOP continues to encourage staff members who have not accepted a vaccine to do so. (Staff members have obtained vaccinations from other providers in the community.)

BOP has also offered vaccines to inmates, based on priority of need in accordance with CDC guidelines. In general, the vaccine was offered first to inmates over 75 years of age; then to inmates over 65 years of age; then to inmates of any age who present a condition identified by the CDC as presenting a risk of severe COVID-19 disease; and then to all inmates. As of September 21, 2021, BOP has administered a total of 324,998 doses to staff and inmates nationwide. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

Pursuant to the BOP website, Waseca FCI currently has zero staff members and three inmates who have tested positive for COVID-19. Waseca FCI has had no staff or inmate deaths due to COVID-19.

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. The latest information on BOP's vaccination efforts, including the number of completed vaccinations

5

at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

Ms. Prophet's BOP medical records indicate she received her first Moderna vaccine on January 22, 2021, and her second vaccine on February 24, 2021. These records were provided with the government's response to Prophet's third motion for compassionate release and will be emailed again to the court clerk rather than attached to this response, to maintain Ms. Prophet's privacy.

### IV. The Defendant has Not Identified Extraordinary and Compelling Reasons

Because the defendant has been fully vaccinated since approximately March 10, 2021, she cannot show extraordinary reasons that she should be released from prison.

Further, the Sentencing Commission's pertinent policy statement related to extraordinary or compelling reasons appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

### V. Defendant Remains a Danger to the Community

This Court may not reduce the defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13. This defendant is a danger to the community and should not be considered for compassionate release.

Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and

6

community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that this defendant is not a danger to the safety of any other person or the community.

The defendant pled guilty to bank fraud and identity theft. The defendant's conduct was set forth in the Eighth Circuit's opinion denying the appeal of her sentence:

> During 2002 to 2004 Prophet was convicted of several felonies for embezzling money from previous employers for whom she had worked as a bookkeeper, and she was paroled in 2010. As a condition of release she agreed not to "attempt to gain employment, be employed or hold any position, where she [would be] required to have access to cash, checks or any account information of her employer or any one doing business with her employer." Prophet nevertheless applied for and accepted a bookkeeping position for Dorfman Plumbing Supply Company (Dorfman) in November 2012. She did not disclose her criminal history or her conditions of supervised release to Dorfman, and she did not inform her parole officer about her employment.
>
> While at Dorfman, Prophet forged its president's signature on 104 checks from December 2012 to August 2013. Ninety nine of the checks were made out to her using variations of her name. She endorsed checks with the names Susan Morriss, Susan Prophet, or Susan Prophett, and deposited each in one of her three Valley View and Academy bank accounts. Prophet had opened these accounts using misspelled variations of her own name and other false information. In order to conceal her fraud from company accountants, she altered bank statements to display fabricated check images and falsified the company's ledger to show payments to vendors. Prophet was terminated from Dorfman in August 2013. She was soon hired as a bookkeeper for another company and began embezzling money there as well.

*United States v. Prophet*, 825 F.3d 904, 905 (8th Cir. 2016).

In addition to the Eighth Circuit's summary of Ms. Prophet's crimes, the Government notes that Prophet embezzled $543,034.26 from Dorfman, a small locally owned business.

7

Prophet began embezzling from Mr. Dorfman and his wife just a month after she started working for him. (PSR, ¶ 5.) Prophet then embezzled $188,460.93 from North Point Skilled Nursing in just the few months she worked for them, after being fired from Dorfman. (PSR, ¶ 14.)

She embezzled $543,034.26 from Mr. Dorfman in just a year and used his money so that she could live extravagantly. (PSR, ¶¶ 9-10.) Mr. Dorfman pleaded with this Court to imprison Prophet:

> Susan Prophet stole a staggering sum of money from my wife Jo, who is here with me, and myself. And not only from us-as she stole from many companies before us. Astoundingly when we discovered her check writing forgeries in August of 2013, she disappeared, only to take a job with another company where she proceeded to steal another enormous some of money. She was only stopped by her arrest and incarceration in February of 2014 when charges were filed against her.
>
> Susan Prophet has embezzled many times before and, if given a chance, will do so again. She is a domestic terrorist if you are a small business owner. There will be future victims. Please protect some of them by putting her in jail as long as you are allowed by law. When she gets out, stipulate that if she is caught working in the financial area of any business she will go back to jail. If she were a serial murderer, she would never get out of jail. As a serial embezzler the devastation she wreaks is nearly as disastrous. Yet she can't be given life in jail as she deserves.

(PSR, ¶ 14.)

The nature and circumstances of Prophet's crimes were egregious. The weight of the evidence was very strong and provides Prophet with no mitigation. Her history and characteristics paint a picture of a sociopathic recidivist who abused her positions, victimized others, and flaunted the rules of her parole. Finally, she remains a danger to others based upon her relentless thieving and dishonesty. All four statutory factors weigh against Prophet's release. Nothing about the COVID-19 pandemic reduces the defendant's danger to others.

The defendant has failed to demonstrate that the § 3553(a) factors the Court considered at the time of sentencing have changed, therefore the Court should deny the defendant's motion for immediate release.

VI. **The Court Has No Authority to Place the Defendant on Home Confinement**

The defendant asks the Court to reduce her sentence or resentence her to home confinement for the remaining 10 years of her custodial sentence. (D.E. 93 at 36.) The Court should decline the request for home confinement because read in conjunction, 18 U.S.C. §§ 3621(b) and 3624(c) impose upon the BOP a qualified obligation to facilitate a prisoners' transition from incarceration in a prison facility to a halfway house. (*See Elwood v. Jeter*, 386 F.3d 842, 844, 847 (8th Cir. 2004).) "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006). In a case originating from the Western District of Missouri, in a concurring opinion, Judge Bright opined that the Second Chance Act of 2007 marked "an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring) (citing Pub. L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008).) The First Step Act, under which the defendant is seeking release, further expanded the BOP's authority to place prisoners, providing more ways to reach rehabilitation goals, but it did not change a district court's authority to place an inmate, and does not provide authority for the Court to order placement in a halfway house or order home confinement.

On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons to prioritize the use of statutory authority to place prisoners in home confinement. The CARES Act, passed on March 27, 2020, temporarily expanded this provision, while leaving its application to the BOP. As part of the CARES Act, Congress sought to address the spread of the coronavirus

9

in prison by permitting the BOP to expand the use home confinement under § 3624(c)(2). Section 12003(b)(2) of the CARES Act suspends, during the emergency of the coronavirus pandemic, the limitation in § 3624(c)(2) that restricts home confinement to the shorter of 10 percent of the inmate's sentence or 6 months, once the Attorney General makes requisite finding that emergency conditions will materially affect the function of BOP.[3] The Attorney General made those findings on April 3, 2020, conferring on BOP the authority to expand its use of home confinement, and the BOP is devoting all available resources to executing that directive.

As set out above, and pursuant to 18 U.S.C. § 3642(c)(2), the BOP has exclusive authority to determine the placement of prisoners. Although the First Step Act, CARES Act, and Second Chance Act give eligible inmates the possibility to be considered for home confinement or halfway house placement, that decision reset with the BOP. *See United States v. Kluge*, 2020 WL 209287 at *3 (D. Minn. Jan 14, 2020) ("Nothing in the statutes amended by the FSA permits the Court to place Defendant in home confinement. Under the FSA, the authority to place a prisoner remains with the BOP."); *United States v. James*, 2020 WL 1922568 *3 (D. Minn. April 21, 2020) (holding the district court "lacks jurisdiction to grant [defendant's] motion under the First Step Act, Second Chance Act, or CARES Act.")

As detailed above, since March 26, 2020, the BOP has assessed and placed a significant number of inmates on home confinement (*see* https://www.bop.gov/coronavirus/index.jsp), focusing on, among other factors, the vulnerability of the inmates, the prisons most at risk, and the

---

[3] Section 12003(b)(2) provides that "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

10

dangers posed by the inmates if released. The BOP is in the best position to determine who should be placed on home confinement and has greatly expanded this option for suitable inmates during this time of crisis.

Here, because the defendant does not present an extraordinary and compelling reason that justifies a reduction of her sentence, the Court should not reconsider the terms of her sentence. Regardless of the Court's determination on compassionate release, the authority to determine the defendant's placement for the remainder of her sentence rests squarely with the BOP.

### VII. Record of Rehabilitation is Not an Extraordinary and Compelling Reason

Finally, the defendant asserts she has demonstrated a record of rehabilitation, and the Government does not dispute that the accomplishments the defendant has made in prison, as documented in the exhibit of her motion, are laudable. However, even if she were rehabilitated, that is not an extraordinary and compelling reason for a reduction of a term of imprisonment. (U.S.S.G. § 1B1.13 Commentary n.3; 28 U.S.C. § 944(t).)

### CONCLUSION

Based on the foregoing, the Government respectfully requests that the defendant's third motion for compassionate release be denied.

Respectfully submitted this 22nd day of July 2022.

        Teresa A. Moore
        United States Attorney

By:   */s/ Kathleen D. Mahoney*

        Kathleen D. Mahoney
        Assistant United States Attorney

        Charles Evans Whittaker Courthouse
        400 E. 9th Street, Suite 5510
        Kansas City, Missouri 64106
        Telephone: (816) 426-3122

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on July 22, 2022, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and defendant at:

> Susan E. Prophet
> Inmate No. 26698-045
> FCI Waseca
> P.O. Box 1731
> Waseca, MN 56093

*/s/ Kathleen D. Mahoney*

Kathleen D. Mahoney
Assistant United States Attorney